IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION – CINCINNATI

| | | |
|---|---|---|
| JENNIFER FAUSTO, et al., *on behalf of themselves and all others similarly situated,* | : | Case No. 1:25-cv-142 |
| | : | |
| | : | Judge Matthew W. McFarland |
| Plaintiffs, | : | |
| | : | |
| v. | : | |
| | : | |
| AMERICAN HONDA MOTOR CO., INC., | : | |
| | : | |
| | : | |
| Defendant. | : | |

## ORDER AND OPINION

This matter is before the Court on Defendant American Honda Motor Co., Inc.'s

Motion to Dismiss (Doc. 27). Plaintiffs filed a Response in Opposition (Doc. 30), to which

Defendant filed a Reply in Support (Doc. 31). Thus, the matter is ripe for review. For the

following reasons, Defendant's Motion to Dismiss is **GRANTED**.

## ALLEGED FACTS

Defendant American Honda Motor Co., Inc. ("Honda") engineered,

manufactured, tested, warranted, advertised, distributed, sold, and leased the following

vehicles, hereinafter known as the Class Vehicles: 2020-2022 Honda Pilot (except LX),

2020 Honda Passport (except Sport), 2021-2022 Honda Passport, and 2020-2022 Honda

Odyssey (except LX). (First Am. Compl., Doc. 25, ¶¶ 1, 17.) Plaintiffs Jennifer and Sean

Fausto ("Plaintiffs") reside in Cincinnati, Ohio, and purchased a new 2020 Honda Pilot

Touring vehicle ("Fausto Vehicle") from Jeff Wyler Superior Honda ("Wyler") in

Cincinnati, Ohio, an authorized dealer of Honda cars. (*Id.* at ¶¶ 13, 71.) Plaintiffs state that Wyler made representations as to their vehicle's performance and quality, assuring Plaintiffs that it was in working order. (*Id.* at ¶ 73.) Plaintiffs spoke to the salesperson at Wyler and reviewed the vehicle's features before purchasing. (*Id.* at ¶ 72.) However, after purchasing the vehicle, Plaintiffs began to experience issues with the infotainment system. (*Id.* at ¶ 77.) Specifically, the Fausto Vehicle repeatedly made popping and crackling noises and the infotainment screen repeatedly darkened and failed (the "Electrical Defect"). (*Id.*) Plaintiffs allege that the Electrical Defect posed a safety risk because the noises were distracting, the screen's failure prevented them from using it for navigation, and the hands-free phone call feature became unavailable when the issues manifested. (*Id.* at ¶ 78.)

On July 20, 2021, Plaintiffs brought the Fausto Vehicle to Wyler and informed the dealership of the Electrical Defect. (First Am. Compl., Doc. 25, ¶ 79.) Wyler, in response, inspected the vehicle and found a loose connection of the Media Oriented Systems Transport ("MOST") communication coaxial cable to the terminals in the vehicle's cable connector. (*Id.* at ¶¶ 79, 51.) The dealership performed a repair by replacing connectors, but Plaintiffs allege that the defect continued. On January 4, 2022, Plaintiffs again brought their vehicle to Wyler for repair; in response, the dealership ordered a new rear entertainment control unit, which they replaced on January 13, 2022. (*Id.* at ¶¶ 81-82.) However, the defect continued, so Plaintiffs brought the vehicle to Wyler once again for repair on April 5, 2022. (*Id.* at ¶¶ 83-84.) Wyler replaced the display screen and control unit. (*Id.* at ¶ 84.) Nevertheless, the Fausto Vehicle continued to experience the same

Electrical Defect, causing Plaintiffs to bring the vehicle to Wyler four additional times. (*Id.* at ¶¶ 85-93.) Each time, Wyler attempted repairs, which included: straightening the connector wires, clearing infotainment data, performing a software update, and replacing the dashboard wiring harness. (*Id.*) Wyler also contacted Honda's Tech Line departments for additional guidance. (*Id.*) The Electrical Defect was never fixed. (*Id.* at ¶ 93.)

In late 2023, Honda issued a recall regarding the Electrical Defect; the recall notice states that Honda began investigating the defect on February 1, 2019, after it received a quality report on audio and display issues. (First Am. Compl., Doc. 25, ¶ 94.) Plaintiffs had the recall repair performed on the Fausto Vehicle in February 2024. (*Id.*) Nevertheless, Plaintiffs allege that other Class Vehicle owners have complained that the Electrical Defect has continued after receiving the recall repair. (*Id.* at ¶ 56.)

Plaintiffs claim that Honda was aware of the Electrical Defect because, in August 2020, Honda issued a Technical Service Bulletin ("TSB"), TSB No. 20-058, titled "Popping or Crackling from the Speakers; No Sound from the Audio System; Network Loss Message and/or Display Issues." (First Am. Compl., Doc. 25, ¶ 35.) TSP No. 20-058 applied to 2019-2021 model year Passport (expect Sport) and 2019-2021 model year Pilot (except LX) vehicles. (*Id.* at ¶ 36.) The TSB provided instructions on fixing the issue to Honda dealers. (*Id.* at ¶ 37.) TSB No. 20-058 was revised to provide additional repair instructions, include 2020 and 2021 Passport vehicles, and extend the warranty for MOST bus network connectors for the 2018-2020 Odyssey, 2019-2020 Passport, and 2019-2020 Pilot. (*Id.* at ¶¶ 39, 42-44.) And, in February 2021, Honda issued TSB No. 21-013, which addressed the Electrical Defect as applied to 2018-2020 model year Odyssey vehicles. (*Id.*

3

at ¶ 39.) Finally, in September 2021, Honda issued a "Job Aid" titled "MOST Bus Network: Overview, Troubleshooting, and Repairs," which covered the 2018 and later Odyssey, 2019 and later Passport, and 2019 and later Pilot. (*Id.* at ¶ 47.) Plaintiffs assert that, while Honda knew about the Electrical Defect at least in 2020, it did not disclose the defect to consumers at the time of sale or lease until Honda issued the recall in late 2023. (*Id.* at ¶¶ 48-50.)

## PROCEDURAL POSTURE

Plaintiffs first brought their Complaint on behalf of themselves and all others similarly situated in the Central District of California on August 27, 2024. (Compl., Doc. 1.) On November 18, 2024, Plaintiffs filed their First Amended Complaint (Doc. 25), and Honda filed its Motion to Dismiss (Doc. 27) shortly thereafter. The parties filed a joint brief regarding transfer of venue (Doc. 34) on the court's order. Following this briefing, the court in the Central District of California found that venue was improper and transferred the case to this Court. (In Chambers Transfer Order, Doc. 35.) Honda's Motion to Dismiss (Doc. 27) remains pending and is ripe for the Court's review. The Motion seeks to dismiss all of the claims in the First Amended Complaint, which are: (1) common-law fraudulent concealment; (2) common-law unjust enrichment; (3) violations of the Ohio Consumer Sales Practice Act, Ohio Revised Code § 1345.01; (4) breach of express warranty pursuant to Ohio Revised Code § 1302.26; and (5) breach of the implied warranty of merchantability pursuant to Ohio Revised Code § 1302.27. (First Am. Compl., Doc. 25, ¶¶ 109-66.)

4

## LEGAL STANDARD

Under Federal Rule of Civil Procedure 12(b)(6), a motion to dismiss for failure to state a claim tests a plaintiff's cause of action as stated in a complaint. *Golden v. City of Columbus*, 404 F.3d 950, 958 (6th Cir. 2005); Fed. R. Civ. P. 12(b)(6). A claim for relief must be "plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). Courts accept all factual allegations as true and construe them in the light most favorable to the plaintiff. *Doe v. Baum*, 903 F.3d 575, 581 (6th Cir. 2018). That said, courts are not bound to do the same for a complaint's legal conclusions. *Twombly*, 550 U.S. at 555. And, when a complaint contains sufficient facts to satisfy the elements of an affirmative defense put forth by a defendant, courts may grant dismissal on that basis. *Est. of Barney v. PNC Bank, Nat. Ass'n*, 714 F.3d 920, 926 (6th Cir. 2013). Meanwhile, under Federal Rule of Civil Procedure 12(b)(1), a motion to dismiss may "either attack the claim of jurisdiction on its face or it can attack the factual basis of jurisdiction." *Golden v. Gorno Bros., Inc.*, 410 F.3d 879, 881 (6th Cir. 2005). Generally, standing and mootness are considered jurisdictional issues and are attacked through Rule 12(b)(1) motions to dismiss. *See Myslivecek v. FCA US LLC*, No. 21-10346, 2022 WL 17904526, at *2 (E.D. Mich. Dec. 23, 2022).

## ANALYSIS

### I. Defendant's Request for Judicial Notice

As a preliminary matter, the Court will first address Honda's Request for Judicial Notice in Support of Motion to Dismiss the First Amended Complaint (Doc. 28). In its Request, Honda asks the Court to take judicial notice of three items: (1) the declaration of Eldon G. Leaphart filed in *Conti, et al. v. American Honda Motor Co., Inc.*, Case No. 2:19-

CV-2160 (C.D. Cal.); (2) the Honda Job Aid titled "MOST Bus Network: Overview, Troubleshooting, and Repairs," Version 3, dated September 2021 ("Job Aid"); and (3) the Part 573 Safety Recall Report submitted in connection with National Highway Traffic Safety Administration ("NHTSA") Recall No. 23V-431, dated June 16, 2023 ("NHTSA Recall"). (Request, Doc. 28, Pg. ID 432.) Notably, Plaintiffs do not object to Honda's request.

Honda brings its Motion to Dismiss based on Rule 12(b)(1) and 12(b)(6). First, consideration of documents outside of the record is appropriate as applied to the portion of Honda's Motion that falls in the purvey of Rule 12(b)(1). *See Hatcher v. United States*, 512 F. App'x 527, 528 (6th Cir. 2013) ("[A] court may consider affidavits and other documents outside the record on a Rule 12(b)(1) motion, but it must do so in a manner that is fair to the non-moving party"). Generally, when deciding a motion to dismiss under Rule 12(b)(6), though, a court can only consider the materials which are properly before it. *Diei v. Boyd*, 116 F.4th 637, 643 (6th Cir. 2024). "[A] Rule 12(b)(6) motion should be decided solely on the complaint." *Id*. But, there is an exception to this general rule: a court may review "exhibits attached to defendant's motion to dismiss so long as they are referred to in the Complaint and are central to the claims contained therein." *Id*. (cleaned up). When determining whether the documents are central to the complaint's claims, "it must also be clear that there exists no material disputed issues of fact regarding the relevance of the documents." *Id*. at 644 (quotation omitted). Further, "a district court should not rely on documents at the motion-to-dismiss stage if their authenticity is disputed." *Moyer v. Gov't Emp. Ins. Co.*, 114 F.4th 563, 568 (6th Cir. 2024).

Moreover, "a court may, in undertaking a 12(b)(6) analysis, take judicial notice of 'matters of public record, orders, items appearing in the record of the case, and exhibits attached to the complaint." *Electronic Merchant Sys. LLC v. Gaal*, 58 F.4th 611, 617 (6th Cir. 2023) (cleaned up). Federal Rule of Evidence 201(b) governs judicial notice. According to Rule 201(b), courts may take judicial notice of "a fact that is not subject to reasonable dispute" because it is either "generally known" within the court's territorial jurisdiction, or because it "can be accurately and readily determined from sources whose accuracy cannot be reasonably questioned." Fed. R. Evid. 201(b). But, judicial notice is limited: "a court may take notice of the documents and what they say, but it cannot consider the statements contained in the document for the truth of the matter asserted." *Platt v. Bd. of Comm'rs on Grievances & Discipline of Ohio Supreme Court*, 894 F.3d 235, 245 (6th Cir. 2018) (cleaned up). Put differently, a court may take judicial notice of the document's existence, but not the document's substance. *Fox v. Kia America, Inc.*, 726 F. Supp.3d 765, 775 (N.D. Ohio 2024). As Honda asks that the Court recognize three separate items, the Court considers each one below.

First, Honda asks that the Court take judicial notice of the Leaphart Declaration from the *Conti* case because "its authenticity is not in question and its existence and contents are not subject to reasonable dispute." (Request, Doc. 28, Pg. ID 433-34.) While judicial notice of a fact in a civil case is conclusive, *see United States v. Jones*, 580 F.2d 219 (6th Cir. 1978), Honda here asks the court to take judicial notice of the entire declaration. Courts have found such requests too broad. *See Chalmers v. Mays*, No. 2:09-CV-2051, 2022 WL 3006843, at *11 (W.D. Tenn. July 28, 2022) (requesting party failed to identify "what

7

adjudicative facts he seeks to be judicially noticed," in declaration from another case, leading court to deny the request for judicial notice). Furthermore, while the existence of the declaration is not subject to reasonable dispute, the Court finds that its content contains facts that "would be vigorously disputed were the Court to recognize them" through judicial notice. *Caudill Seed and Warehouse Co., Inc. v. Jarrow Formulas, Inc.*, No. 3:13-CV-82, 2021 WL 863203, at *4 (W.D. Ky. Mar. 8, 2021); *see also Deal v. Hamilton Cnty. Bd. of Educ.*, 392 F.3d 840, 852-53 (6th Cir. 2004) (while there was no dispute that declarations in another case existed, the contents of those declarations provided facts "very much in dispute" in the present case). Accordingly, the Court declines to take judicial notice of the Leaphart Declaration. Not only is the request too broad, but the declaration itself provides facts that are in dispute in this case.

Next, the Court addresses Honda's request for judicial notice of the Job Aid "under the incorporation by reference doctrine because Plaintiffs reference and rely upon selective portions of the document" in the First Amended Complaint. (Request, Doc. 28, Pg. ID 433.) Applying the two-part test for accepting exhibits attached to a motion to dismiss, the Court first notes that the Job Aid is indeed referred to in the Complaint. (First Am. Compl., Doc. 25, ¶ 47.) And, the Job Aid is central to Plaintiffs' claims that Honda failed to correct the Electrical Defect. (*See id.* at ¶ 46.) There is no dispute as to the relevance of the Job Aid, and notably, Plaintiffs do not dispute the authenticity of the Job Aid, either. *See Diei*, 116 F.4th at 643; *Moyer*, 114 F.4th at 568. Accordingly, the Court takes judicial notice of the Job Aid and will consider it when examining Honda's Motion to Dismiss.

Finally, the Court addresses the NHTSA Recall. Once again, Honda asserts that the Court should take judicial notice of it "under the incorporation by reference doctrine because Plaintiffs reference and rely upon selective portions of this document" in the First Amended Complaint. (Request, Doc. 28, Pg. ID 433.) Additionally, Honda states that the NHTSA Recall "is a matter of public record capable of ready verification." (*Id.*) The Court agrees with Honda for all these reasons. First, Plaintiffs reference the Recall in the First Amended Complaint. (First Am. Compl., Doc. 25, ¶¶ 8, 50-57.) And, the NHTSA Recall is central to Plaintiffs' claims regarding Honda's knowledge of the Electrical Defect and failure to address it. (*See id.*) There is no dispute as to the relevance of the NHTSA Recall, and notably, Plaintiffs do not dispute the authenticity of the Recall, either. *See Diei*, 116 F.4th at 643; *Moyer*, 114 F.4th at 568. Lastly, courts "frequently take judicial notice of federal regulatory agency materials" under Rule 201(b). *Sharp v. FCA US LLC*, 637 F. Supp.3d 454, 459 (E.D. Mich. 2022). Accordingly, the Court takes judicial notice of the NHTSA Recall and will consider it in conjunction with Honda's Motion to Dismiss.

## II.     Defendant's Motion to Dismiss

Having established that the Job Aid and NHTSA Recall are properly before the Court at this stage, the Court will now continue with the merits of Honda's Motion to Dismiss. The Motion seeks to dismiss all five of Plaintiffs' claims. (*See* Motion, Doc. 27.) The Court will address each argument in turn.

### a. Standing

As the issue of standing is a question of jurisdiction, *see Solak v. Ford Motor Company*, 683 F. Supp.3d 658, 662 (E.D. Mich. 2023), the Court's analysis begins with

Honda's contention that Plaintiffs lack standing to bring this suit. Article III standing requires that a plaintiff show: "(1) that he suffered an injury-in-fact; (2) the injury is fairly traceable to [the defendant's] misconduct; and (3) a decision in his favor is likely to redress the alleged harm." *Id*. Honda argues that Plaintiffs do not have the requisite standing to pursue their overpayment and purported diminution-in-value damages claims. (Motion, Doc. 27, Pg. ID 384 (collecting cases).) In support of this, Honda points to several cases where courts have found that alleged overpayment for the Class Vehicle and loss in value do not constitute actual or imminent injuries for purposes of standing. To this end, Honda states that Plaintiffs' alleged injury of a loss in value of the Class Vehicles is "strictly hypothetical" and "does not confer standing." (*Id.*)

In response, Plaintiffs first argue that the recall repair did not "compensate for the fact that, *inter alia*, Class Vehicle owners overpaid for their vehicles due to the undisclosed defect." (Response, Doc. 30, Pg. ID 455.) These benefit-of-the-bargain damages "need not account for benefits received after the purchase." (*Id.* (quoting *Pulaski & Middleman, LLC v. Google, Inc.*, 802 F.3d 979, 989 (9th Cir. 2015)).) According to Plaintiffs, "post-sale conduct such as Honda's June 2023 recall is irrelevant because the benefit of the bargain damages should be measured at the time of sale." (*Id.* (quoting *MacDougall v. Am. Honda Motor Co.*, No. SACV 17-1079, 2023 WL 9687349, at \*14 (C.D. Cal. Oct. 3, 2023) (cleaned up)).) In Plaintiffs' estimation, their injury is not hypothetical; they have adequately alleged the existence of the Defect and would not have purchased their car or would have paid less for the car had they known about the Defect. (*Id.* at Pg. ID 457.)

In the Sixth Circuit, it is well-established that, "[w]hen a manufacturer sells a product that is defective, which causes consumers to be misled at the point of sale into paying more and getting less than they believed they were purchasing, the consumers suffer an injury in fact, even if that defect does not manifest itself in every individual unit." *In re FCA US LLC Monostable Elec. Gearshift Litig.*, MDL No. 2744, 2017 WL 1382297, at *5 (E.D. Mich. Apr. 18, 2017); *see Solak*, 683 F. Supp.3d at 662; *Sharp v. FCA United States LLC*, 637 F. Supp.3d 454, 462-63 (E.D. Mich. 2022); *Raymo v. FCA US LLC*, 475 F. Supp.3d 680, 692 (E.D. Mich. 2020); *Crawford v. FCA US LLC*, No. 2:20-CV-12341, 2021 WL 3603342, at *2-3 (E.D. Mich. Aug. 13, 2021). In several of these cases, standing for money damages existed even when the manufacturer had issued a recall and offered repairs. *See Solak*, 683 F. Supp.3d at 662-63; *Raymo*, 475 F. Supp.3d at 692-93; *Crawford*, 2021 WL 3603342, at *2-3.

To be sure, some courts have found that plaintiffs lacked standing for claims based on diminution-in-value. *See Hadley v. Chrysler Grp, LLC*, 624 F. App'x 374 (6th Cir. 2015); *Diaz v. Ford Motor Co.*, No. 23-10029, 2023 WL 6164455, at *4 (E.D. Mich. Sept. 21, 2023). However, the Court finds these cases distinguishable. First, in *Hadley*, the defendant was not the manufacturer of the car. 624 F. App'x at 378. So, the defendant did not cause the defect that allegedly caused the diminished value. *Id.* Indeed, the court in *Hadley* distinguished the facts from other cases by noting that the plaintiffs failed to allege injury simply because the repair that the defendant provided was delayed. *Id.* Similarly, in *Diaz*, the court found that the plaintiffs lacked standing because two conditions were present: first, the defendant provided a recall repair, and second, the plaintiffs did not allege that

11

their vehicles contained the defect at all. 2023 WL 6164455, at *3. Together, these conditions showed that the plaintiffs suffered no cognizable injury or damages associated with overpaying for a defective vehicle. *Id.*

Here, meanwhile, Plaintiffs have alleged that their Class Vehicle contained the defect when they purchased it; they further allege that they would not have paid as much for the Class Vehicle, or would not have purchased the Class Vehicle at all, if they had known about the defect. (First Am. Compl., Doc. 25, ¶¶ 62, 76-77.) Accordingly, the Court finds that their allegations amount to a cognizable injury and they have standing to pursue monetary damages. *See Solak*, 683 F. Supp.3d 662-63; *Sharp*, 637 F. Supp.3d at 462-63; *Raymo*, 475 F. Supp.3d at 692.

### b. Mootness

Mootness can come in two forms: the first arises under Article III jurisdictional limits, and the second under discretionary or prudential concerns. *United States v. Street*, 933 F.2d 1010 (Table), 1991 WL 85255, *2 (6th Cir. 1991). Article III mootness is "determined by examining whether an actual controversy between the parties exists in light of intervening circumstances." *Id.* A case is moot "when the issues presented are no longer live or the parties lack a legally cognizable interest in the outcome." *Los Angeles Cty. v. Davis*, 440 U.S. 625, 631 (1979) (internal quotation marks omitted). The issue must remain live at all stages of review, not just at the time the complaint was filed. *Genesis Healthcare Corp. v. Symczyk*, 569 U.S. 66, 71-72 (2013).

On the other hand, a prudentially moot case occurs when the case reaches a "point where prolonging the litigation any longer would itself be inequitable." *Winzler v. Toyota*

12

*Motor Sales U.S.A., Inc.*, 681 F.3d 1208, 1210 (10th Cir. 2012). Generally, this happens when "events so overtake a lawsuit that the anticipated benefits of a remedial decree no longer justify the trouble of deciding the case on the merits." *Id.* A court has discretion in dismissing a case for prudential mootness. *Chamber of Commerce v. United States Dept. of Energy*, 627 F.2d 289, 291 (D.C. Cir. 1980).

In their prayer for relief, Plaintiffs request injunctive and declaratory relief in the form of a requirement for Honda to replace or fully repair Class Vehicles and comply with various provisions of state and federal consumer protection laws, along with an enjoinment of Honda from future deceptive advertising. (First Am. Compl., Doc. 25, Pg. ID 366-67.) To the extent that Plaintiffs demand Honda fully repairs or replaces Class Vehicles, Honda states that this injunctive relief is moot. (Motion, Doc. 27, Pg. ID 383 (quoting *Hadley* 624 F. App'x at 379).) As Honda points out, courts have found similar claims for repair or replacement to become moot when the defendant institutes a recall program. *See Hadley*, 624 F. App'x at 379. According to Honda, the injunction here "would serve no purpose because Honda has already provided an efficacious no-charge repair to all putative class members." (Motion, Doc. 27, Pg. ID 383.) And, "NHTSA has continuing jurisdiction and authority to require further measures if—contrary to all available data—the recall repair does not fully resolve the problems." (*Id.*) Additionally, Honda points out that 49 U.S.C. § 30120(d) already provides a remedy program for consumers who paid for repairs resulting from the defect prior to the recall. (*Id.*) So, "there is nothing left for this Court to order [Honda] to do with respect to Plaintiffs." (*Id.* (quoting *Hadley*, 624 F. App'x at 380).)

13

Nevertheless, "a finding of prudential mootness would not be appropriate if the recall remedy leaves Plaintiffs without complete relief." *Pacheco v. Ford Motor Co.*, No. 22-11927, 2023 WL 2603937, at *4 (E.D. Mich. Mar. 22, 2023). In such circumstances, "there exists some cognizable danger of recurrent violation, some cognizable danger that the coordinate branch will fail and [the plaintiffs] will be left without a complete remedy." *Id.* (quoting *Winzler*, 681 F.3d at 1211-12). A cognizable danger is one "perceptible or recognizable from the evidence before the court and is something more than the mere possibility of failure." *Id.* (quoting *Winzler*, 681 F.3d at 1212) (cleaned up). In its Response, Plaintiffs outline two ways that the recall leaves them without a complete remedy. First, four reports have been filed indicating that the recall repair did not resolve the Electronic Defect. (Response, Doc. 30, Pg. ID 458.) However, Honda points out that four complaints over the span of eighteen months "are probative of nothing." (Reply, Doc. 31, Pg. ID 478 (citing *Diaz*, 2023 WL 6164455, at *4).) In fact, in *Diaz*, the court found that just two complaints were insufficient to create a plausible inference that the recall repair was ineffective, rendering the plaintiffs' claims prudentially moot. 2023 WL 6164455, at *4.

Additionally, though, Plaintiffs argue that the NHTSA Recall does not address "loss in market value" of the Class Vehicles and thus does not moot their claims. (Response, Doc. 30, Pg. ID 456.) In support of this contention, Plaintiffs point to an out-of-circuit case. (*Id.* (citing *Peckerar v. Gen. Motors, LLC*, No. ED CV 18-2153, 2020 WL 5289919 (C.D. Cal. May 27, 2020)).) In *Peckerar*, though, the plaintiffs sought reimbursement for damage occurring to their vehicles from collisions caused by the defect prior to the repair. 2020 WL 5289919, at *3. The recall, therefore, did not provide

14

the plaintiffs with relief related to that damage. *Id.* But, Plaintiffs have alleged no such damage here.

In any event, Plaintiffs' argument does not persuade. Several courts in the Sixth Circuit have found claims prudentially moot when repairs have been made to the class vehicles pursuant to an NHTSA recall. *Diaz*, 2023 WL 6164455; *Sharp*, 637 F.3d at 464; *Solak*, 683 F. Supp.3d at 663-64. These courts found the claims prudentially moot because the plaintiffs "[had] in hand a remedial commitment from our coordinate branches all the same." *Sharp*, 637 F. Supp.3d at 464 (quoting *Winzler*, 681 F.3d at 1211) (cleaned up). In many of these cases, "there was never a dispute between the parties as to whether a safety defect exist[ed] in the vehicles or whether [the defendant] would repair that defect [...] as [the defendant] acknowledged the safety defect in the recall notice and promised to repair it, for free, as quickly as possible." *Hadley*, 624 F. App'x at 379 (cleaned up). The Court finds these cases analogous to the one at hand. Honda has issued a recall for the Class Vehicles, promising to repair every affected vehicle without charge, and to reimburse any customer who paid for repairs related to the Electronic Defect. (*See* NHSTA Recall, Doc. 27-5.) As is well-established in the Sixth Circuit, Plaintiffs' claims for injunctive and declaratory relief are moot.

In fact, courts have found that, even when plaintiffs had standing to bring their monetary damages, these claims were still moot. *See Sharp,* 637 F. Supp.3d at 468; *Solak*, 683 F. Supp.3d at 663-65. Indeed, in *Sharp*, the plaintiffs argued that prudential mootness only applied to equitable remedies, not their monetary damages. 637 F. Supp.3d at 465. However, as the court noted, the recall "removed the defect upon which the plaintiffs'

diminished-value injury claim is based." *Id.* at 466 (quoting *Flores v. FCA US LLC*, No. 19-10417, 2020 WL 7024850, at *4 (E.D. Mich. Nov. 30, 2020)). While the plaintiffs in *Sharp*, like Plaintiffs here, relied on *Philips v. Ford Motor Company*, No. 14-CV-2989, 2016 WL 693283 (N.D. Cal. Feb. 22, 2016), to dispute the mootness argument, the court found such reliance unavailing. *Id.* In *Philips*, the recall only promised reimbursement if owners submitted documentation by a deadline, so the owners who failed to submit their documentation in time "would be left without a remedy if the court failed to intervene." *Id.* (citing *Philips*, 2016 WL 693283, at *7). No such deadline existed in *Sharp*, and no such deadline exists here, though.

As the Court sees it, the NHTSA Recall promises to fully repair the defect and reimburse any Class Vehicle owner who paid for a repair. Plaintiffs do not claim that the recall repair failed to fix the Fausto Vehicle; indeed, only four reported cases claim that the repair failed. As *Diaz* established, this is not evidence of an ineffective repair. 2023 WL 6164455, at *4. But, even so, courts have found similar claims prudentially moot "despite the fact that the recalls of the defective vehicles at issue were ongoing and had not yet proven successful." *Sharp*, 637 F. Supp.3d at 467 (citing *Hadley*, 624 F. App'x at 378; *Winzler*, 681 F.3d at 1212). Accordingly, the Court finds that it can fashion no other remedy — equitable or not — for Plaintiffs. Just like in *Sharp*, the NHTSA Recall "remove[s] the defect upon which [Plaintiffs'] diminished value injury claim is based." 637 F. Supp.3d at 466; *see also Solak*, 683 F. Supp.3d at 664 (plaintiffs' position that their overpayment claims are not moot "is difficult to fathom when [the recall] measures would remediate the very same defect upon which the diminished-value injury claims

16

are based"). Likewise, Plaintiffs have failed to allege a cognizable danger that the NHTSA Recall process "will fail to provide them with complete relief." *See Diaz*, 2023 WL 6164455, at *6; *Solak*, 683 F. Supp.3d at 664. The Court therefore finds that, in light of the NHTSA Recall, all of Plaintiffs' claims for damages are prudentially moot.

Furthermore, Honda states that Plaintiffs' demand to enjoin future advertising must also be dismissed because Plaintiffs have failed to "plausibly allege a threat of future harm." (Motion, Doc. 27, Pg. ID 384.) To this end, though, Plaintiffs' Response states that they withdraw their request for injunctive relief regarding Honda's advertising. (Response, Doc. 30, Pg. ID 458, n.1.) The Court considers this demand for relief hereby withdrawn.

*  *  *

Accordingly, having found Plaintiffs' claims prudentially moot, the Court's analysis stops here.

**CONCLUSION**

For the foregoing reasons, the Court **GRANTS** Honda's Motion to Dismiss (Doc. 27). Plaintiffs' First Amended Complaint (Doc. 25) is **DISMISSED WITHOUT PREJUDICE** for mootness. This case is hereby **TERMINATED** from the Court's docket.

**IT IS SO ORDERED.**

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO

By: _____

JUDGE MATTHEW W. McFARLAND